FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2012 MAY 18 AM 8 02

STEPHAN HARRIS, CLERK
CHEYENNE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

---

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>MATTHEW S. ROBINSON<br><br>Defendant. | Case No. 11-cr-197-F |

**ORDER ON MOTION FOR JUDGMENT OF ACQUITTAL**

This matter is before the Court on Defendant Matthew Robinson's Motion for Judgment of Acquittal. Defendant asserts that the Government's evidence was insufficient to support a guilty verdict on Counts One and Two beyond a reasonable doubt. Defendant argues that he is entitled to Judgment of Acquittal under Fed. R. Crim. P. 29. Defendant filed his motion on April 18, 2012. The Court has waited for the Government's response to assist the Court in determining how to proceed with this matter, however, after several weeks the Government still has not filed a response to Defendant's Motion. On April 28, 2012, the day

the Government's response was due, the Government filed its Prosecutor's Statement, but has failed to ever respond to the motion. The Court's Local Criminal Rules provide that each party opposing a motion shall file an opposition to to the motion within ten days, excluding weekends and holidays. See L.Cr.R. 47.1(a). The Rule further provides that failure of the responding party to serve a response in the required time, may be deemed by the Court in its discretion as a confession of the motion. Id. It is tempting to deem this motion confessed. If Defendant failed to file his Rule 29 Motion within the proper time period, he would have been barred from filing the motion. The Court does not see any reason why there should not be some accountability for the Government when it fails to file a responsive filing. However, given the time and resources that were put into this trial, the Court believes it is appropriate to consider this motion on the merits.

The Court does not believe that oral argument would materially assist its determination in this mater, based on the considerations that Defendant and his counsel would incur substantial time and expense in appearing for a hearing on this matter, that Defendant's counsel provided comprehensive briefing, while the Government failed to respond and counsel has previously argued many of these same issues during his oral motion at that trial in this matter.

## DISCUSSION

In reviewing a challenge to the sufficiency of the evidence, the Tenth Circuit follows a well established test:

> [T]he test is whether the evidence both direct and circumstantial, together with reasonable inferences to be drawn therefrom, is sufficient if, when taken in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt.

*United States v. Sanders*, 928 F.2d 940, 944 (10th Cir. 1991) (internal quotations and citation marks omitted). "A jury may-and often must-consider circumstantial evidence in determining whether the Government has established the elements of [an] . . . offense." *United States v. Winder*, 557 F.3d 1129, 1137 (10th Cir. 2009) (citation and quotation marks omitted). "In considering whether the evidence is sufficient to support the jury's verdict, we remain mindful that circumstantial evidence is entitled to the same weight as direct evidence." *Id.* (citation omitted). "To sustain a criminal conviction, the Government's evidence must be substantial or raise more than a mere suspicion of guilt, but it need not disprove every other reasonable theory of the case." *Id.* at 1137-38 (citation and quotation marks omitted).

"We must, however, give close scrutiny to the sufficiency of the government's evidence in a conspiracy case . . . for the reasons that slight evidence of a defendant's

connection with a conspiracy is insufficient to support a guilty verdict, and guilt must remain personal and individual." *U.S. v. Brodie*, 403 F.3d 123, 134 (10th Cir. 2005)(citations and quotation marks omitted). "Conspiracy cannot be proven by piling inference upon inference where those inferences do not logically support the ultimate finding of guilt." *Id*. (Citations and quotation marks omitted).

The critical inquiry is not whether the jury was properly instructed, but whether the "evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This "inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id*. at 318-319 (citations and quotation marks omitted). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. In conducting this review, the court is not to "weigh conflicting evidence or consider witness credibility, as that duty is delegated exclusively to the jury." *United States v. King*, 632 F.3d 646, 650 (10th Cir.2011) (citation omitted).

1. **Count Two: Insufficient Evidence of Transportation of Wildlife over State Lines in 2008.**

To convict Defendant of Count Two, which was actually Count Four in the Indictment, Illegal Trafficking in Wildlife, 16 U.S.C. §§ 3372(a)(2)(A) and 3373(d)(1)(B), or the aiding and abetting thereof, 18 U.S.C. § 2, the Government had to prove beyond a reasonable doubt that wildlife taken in 2008 was transported outside of Wyoming. Defendant argues that based on the trial record, the jury could not have reasonably returned a verdict on Count Two because the only evidence was highly speculative.

In this case, there is no question that the antlers from the elk taken in 2008 were confiscated at the Carter Ranch in Wyoming. Therefore, the antlers were never tranported outside Wyoming. The other parts of the elk that may have been transported were the meat and the teeth. The testimony related to the transportation of the meat was from RC Carter and from the recorded statement of Matt Robinson. RC Carter testified that he had the meat processed and that on a subsequent hunt, he might have sent it with Defendant's Uncle Tom. Trial Tr. Vol. IV, pp. 84 (Doc. # 171). The only other evidence regarding the 2008 hunt was the Defendant's recorded statements, which are not helpful because there is some confusion on the hunts and the meat. However, there was no statement that Defendant either transported the elk meat, or that he caused the elk meat to be transported.

In its earlier oral argument in response to Defendant's Judgment of Acquittal at trial, the Government asked the Court to infer that because Defendant's emails to RC Carter only asked for his mount, that it is reasonable to infer that he already had the teeth and the meat. The Court does not believe that this is a reasonable inference, especially given the testimony of RC Carter that he thinks he had the meat processed and probably sent it with Tom Robinson. There is sufficient evidence that the meat was transported to Oregon. The problem for the Government is that there is no evidence that Defendant either transported the meat, or caused, in any manner, the meat to be transported. There is no evidence, not testimony or an email or anything to establish that Matt Robinson did anything to cause the transportation of the elk meat to Oregon. He did not pay for the processing, he did not ask RC Carter when he could get the elk meat out to them, nothing to indicate that Matt Carter transported or caused the transportation of the elk meat. The Court does not believe that there was sufficient evidence that Defendant either transported the meat, or that he caused the elk meat to be transported, for a reasonable jury to find beyond a reasonable doubt that the elk meat met the transportation requirement in Count Two.

The other option for finding that Defendant transported game is the elk teeth. The testimony on this point was from RC Carter, who stated that it was normal protocol to pull the teeth, clean them and give them to the hunter. Trial Tr., Vol. IV, p. 88 (Doc. # 171).

However, RC Carter also testified that he did not specifically remember what happened to the elk teeth in Defendant's 2008 hunt. There is no proof that Defendant had the teeth or that even if he did have the teeth, if he took them back to Oregon with him. The teeth were not confiscated, there is no other evidence that Defendant had these teeth, or that he transported them to Oregon. There is just no evidence that these teeth were ever transported or caused to be transported by Matt Robinson.

For all of these reasons the Court finds that there was insufficient evidence for a reasonable jury to find beyond a reasonable doubt the required element of interstate transportation. Such inference could only be based on impermissible conjecture and speculation. Therefore, Defendant's Motion for Judgment of Acquittal as to Count Two is GRANTED. Count Two, Illegal Trafficking in Wildlife, 16 U.S.C. §§ 3372(a)(2)(A) and 3373(d)(1)(B), or the aiding and abetting thereof, 18 U.S.C. § 2, which is Count Four of the Indictment, is VACATED.

2.   **Count One: Conspiracy to Traffic in Illegal Wildlife**

Defendant also seeks judgment of acquittal on Count One, Conspiracy to Traffic in Illegal Wildlife. To find the Defendant guilty of conspiracy, the Government was required to prove beyond a reasonable doubt that Defendant agreed with at least one other person to violate the Lacey Act. Thus, in order to prove an agreement to violate the Lacey Act, the

government must prove that: (1) Mr. Robinson knowingly agreed to engage in conduct involving the purchase and sale of wildlife with a market value in excess of $350.00 transported in interstate commerce, knowing that said wildlife would be unlawfully taken, possessed, transported and sold; (2) One of the conspirators engaged in at least one overt act furthering the conspiracy's objective; (3) Defendant knew of the essential objective of the conspiracy; (4) Defendant knowingly and voluntarily participated; and (5) there was interdependence among the members, that is the members intended to act together for their shared mutual benefit within the scope of the conspiracy. (Evidentiary Instruction No. 30, Doc. # 168, p. 36).

The jury found that Defendant committed the following overt acts in furtherance of the conspiracy: (1) Concealing the killing of Jim Robinson's illegally killed elk from Tom Desomber by denying a second elk was killed and hiding the antlers; (2) he knowingly assisted in the transportation of John Woodmark's illegally killed elk in 2007; and (3) illegally killing an elk in 2008. In looking at all the evidence in this case in the light most favorable to the Government, the Court finds that the evidence was insufficient to allow the jury to find beyond a reasonable doubt that Defendant Matt Robinson engaged in a conspiracy to knowingly traffic in illegal wildlife.

In this case the Government charged a broad conspiracy beginning in about 2003 and going through December 2009. The central players of the conspiracy were the members of the Carter family, Richard Carter and his sons RC Carter and Mark Carter. The alleged conspiracy also involved several hunters, including Defendant Matt Robinson, his father Jim Robinson, and several others. The Indictment charged that the Carters subdivided their property in order to obtain more landowner hunting licenses. The Carters would then have hunters pay to come to the Carter ranch to hunt elk and the Carters would use their landowner tags for elk taken by hunters without the necessary licenses.

The Indictment alleges that the Carters entered into an agreement with Dee Vantassell to pay $30,000.00 for five hunting slots for elk hunting on the Carter Ranch. Then in 2005, the arrangement became the payment of $7,500.00 for each hunter with four reserved slots. In 2004, James Robinson, Gerald Robinson and Tom Robinson hunted elk at the Carter Ranch. The next year James Robinson made arrangements for Defendant to come to Wyoming with him to hunt elk. The evidence at trial regarding Defendant's involvement in the charged conspiracy revolve around three hunts in 2005, 2007 and 2008.

Defendant's first hunt at the Carter Ranch was in 2005. The evidence at trial established that during the 2005 hunt, both Defendant and James Robinson, had type 3

licenses (antlerless elk). On the first day of hunting season, October 15, 2005, Defendant killed a 7x9 bull elk. On October 16, 2005, James Robinson killed a 7x8 bull elk.

Defendants, James Robinson, Mark Carter and RC Carter took the meat from Defendant's elk to the processor. On the way back to their cabin, they were stopped by Game and Fish Warden Tom DeSomber. Warden DeSomber informed Defendant that his type 3 license was only valid for antlerless elk and that Defendant had unlawfully killed a bull elk. At that time, neither James Robinson nor Matt Robinson told the Game Warden that James Robinson had also killed a bull elk with his type 3 license.

Warden DeSomber allowed Defendant to temporarily keep the 7x9 bull elk head until he could check the applications on file with the Wyoming Game and Fish Department (WGFD). Later that afternoon, Defendant, James Robinson and RC Carter went back into the field to retrieve James Robinson's 7x8 bull elk. The elk was taken back to the cabin where Defendant and his father were staying and the skull plate and antlers were removed from the head. This was done prior to Warden DeSomber coming to the cabin on October 17, 2005.

In its Prosecutor's Statement filed in this matter, the Government asserts that there was testimony that James Robinson's antlers were taken into the cabin so they would not be seen by Warden DeSomber. The Government also asserts that Defendant was present during

discussions concerning the hiding of his father's elk. The Government does not cite any authority for these statements and a review of the trial transcript does not support this statement. The only testimony on this issue was from RC Carter, who testified that he knew there were discussion and that everyone was around the cabin, but he did not remember any specific conversations, or who was involved in those conversations. He also could not say if Defendant saw them take the antlers in or if there was any conversation about the "hiding" the antlers. According to RC Carter, he could not remember exactly, but he thought probably he and his brother moved the antlers into the cabin. (Trial Tr. Vol. IV, pp. 84 (Doc. # 171).

During that meeting, Defendant's antlers were confiscated by Warden DeSomber. On December 5, 2005, Defendant returned to Wyoming to appear in the Washakie County Circuit Court on the citation. The circuit court returned Defendant's elk and Defendant was then allowed to take that elk, including the antlers and meat, across state lines legally.

The following spring, RC Carter transported both James Robinson's and Defendant's mounts to them in Oregon. James Robinson paid for the mounting of the antlers for both him and Matt Robinson. James Robinson also paid the $7,500.00 for both his and Defendant's hunting trips, James Robinson and RC Carter made the arrangements for the transportation of the antlers to Oregon.

Defendant did not come to Wyoming for any hunting trips in 2006 and the next hunt was in 2007. In 2007 Defendant, James Robinson, and his friend John Woodmark, came to hunt elk at the Carter Ranch. Both Defendant and James Robinson had type 1 licenses, but John Woodmark did not have any license. Neither Defendant nor James Robinson got an elk during that trip, but John Woodmark shot and killed a 7x6 bull elk. James Robinson's tag was attached to this elk. This elk was transported on James Robinson's plane back to Oregon. James Robinson also paid RC Carter for guiding this trip for him and Defendant.

The next hunt was in 2008. Defendant and Jim Robinson returned to Wyoming for archery season. Defendant did not have any sort of elk license for this trip. Defendant hunted and killed a small 4x5 bull elk. The elk was tagged with one of the Carter's landowner tags. James Robinson paid RC Carter a total of $15,000.00 for guiding this hunt.

In considering all of the evidence in this case, in the light most favorable to the Government, the Court finds that there is insufficient evidence to support a guilty verdict on the conspiracy count in this case. Starting with the 2005 hunt, the evidence when viewed in the light most favorable to the Government, taking into account every reasonable inference, is that Defendant sat by and failed to report his father took an elk with the wrong license.

The Government is required to show a knowing agreement between Defendant and others to traffic in illegal wildlife. There is no evidence that Defendant heard any

conversation or was involved in any manner in moving the James Robinson's elk horns into the cabin upon the arrival of Warden DeSomber. There is no evidence of an agreement of any kind between Defendant and the Carters or anyone else to traffic in illegally taken wildlife. The preparations for the hunt were made by James Robinson, the hunt was paid for by James Robinson, the mounts were paid for by James Robinson. There is no evidence that Defendant had any communications with the Carters or even his father, James Robinson in planning the hunt or later transporting the elk meat or mounts.

To prove a conspiracy, the Government was required to prove beyond a reasonable doubt that Defendant made an agreement with the Carters or some other co-conspirators to violate the Lacey Act, that Defendant knew of the essential elements of the conspiracy and that Defendant voluntarily participated in the conspiracy. In relation to the 2005 hunt, there was insufficient evidence for a jury to find beyond a reasonable doubt that Defendant was engaged in a conspiracy to traffic illegal wildlife in violation of the Lacey Act.

The next overt act found by the jury was that Defendant assisted in the transportation of John Woodmark's illegally killed elk in 2007. The evidence at trial regarding that 2007 hunt was that year both Defendant and his father, James Robinson, obtained type 1 licenses that allowed them to take a bull elk. However, during that hunt neither Defendant, or his father, was successful in getting an elk. However, John Woodmark, a friend of James

Robinson's, who did not have any license, killed a bull elk. Jim Robinson's type 1 license was put on the bull elk and the elk was transported by plane back to Oregon. In considering the evidence in the light most favorable to the Government, there is evidence that Defendant was present during the time that John Woodmark killed the elk and that Defendant flew back on the same plane with the elk antlers and meat. However, this is not enough evidence to support a conspiracy charge. There is no evidence regarding Defendant's knowledge that James Robinson's tag was placed on John Woodmark's elk and there is no evidence that Defendant was part of any such decision or that he participated in using the tag. Additionally, there is no evidence that Defendant assisted in the transportation, other than the fact that he flew back to Oregon on the same plane as John Woodmark's elk. There is evidence that James Robinson and RC Carter corresponded about John Woodmark not having a license prior to the hunt, but there was no proof that Defendant was aware or part of any of these conversations. There is no evidence of a conspiracy between Defendant and anyone to knowingly traffic illegal wildlife. There is only evidence that Defendant was at the hunt as a legally licensed hunter and that he was on the same plane as John Woodmark's illegally taken elk. There is not even sufficient evidence that a reasonable jury could find that Defendant knew John Woodmark's elk was taken illegally. The Court finds that the evidence, reviewed in the light most favorable to the Government, is insufficient to establish

a conspiracy between Defendant and others related to the 2007 hunting trip and John Woodmark's elk.

The final overt act found by the jury was that Defendant illegally took a bull elk in 2008. The facts before the jury related to the 2008 hunting trip were that Defendant did not have a license for any type of elk in 2008, but did have a deer license, because the application deadline for a deer license was later. In a recorded conversation with Defendant, the reason for the deer licenses was because they were concerned about not having a license for hunting that year.

Defendant came to Wyoming for an archery bull hunt. Defendant did not have an elk license or an archery permit to hunt big game. Defendant killed a small 4x5 bull elk during that hunt. To be guilty of a felony Lacey Act violation, the Government is required to show that Defendant actually knew the taking was illegal, not just mere suspicion. In considering the case as a whole and looking at all the evidence adduced at trial, the evidence to support the conspiracy charge was that RC Carter told the elder members of the Robinson family that using the landowner tags was illegal before they came out to hunt in 2005, that Defendant was present when the Carters concealed Jim Robinson's elk in 2005, that Defendant continued to come to Wyoming to hunt, including in 2007 when John Woodmark took his elk without a license and in 2008 when Defendant took his bull elk without a license.

In the recorded statement to the investigators Defendant acknowledged that he realized then that it was illegal to use the landowner tags, but that he believed at the time of the 2008 hunt that the transfer of landowner tags was legitimate. He stated that RC Carter had taken advantage of his and his dad's naivete. The only other evidence presented by the Government was RC Carter's testimony, in which he stated that the elder Robinsons knew using the landowner tags was illegal, but RC Carter testified that he did not tell Defendant. There was no testimony from RC Carter that Defendant would have known using the landowner tags was illegal.

Additionally, the Government put on much evidence of Defendant's previous hunting experience, information from the Wyoming Game and Fish website indicating tags were not transferable and the language from tags that it was not transferable. However, all of this information goes to whether or not Defendant "should" have known that using the landowner tags was illegal. This is a felony Lacey Act case. The Government was required to prove actual knowledge, it is not enough for the Government to prove that Defendant "should have known", but that he did know the elk were taken illegally.

The Court must consider whether the evidence, either direct or circumstantial, taken together with reasonable inferences to be drawn therefrom, is sufficient when viewed in the light most favorable to the Government that a reasonable jury could find the Defendant guilty

beyond a reasonable doubt. In this case, the Government chose to charge Defendant in a conspiracy under the "knowingly" provisions of the Lacey Act. Therefore, the Government is required to prove that Defendant knew, not that he should have known, the transfer of landowner tags was illegal in Wyoming. The Court does not believe that there is sufficient evidence, either direct or circumstantial, including all reasonable inferences therefrom to prove Defendant guilty beyond a reasonable doubt for knowingly conspiring to traffic in illegal wildlife. Other than speculation and conjecture and piling inference upon inference, there is insufficient evidence to find that Defendant knowingly conspired to traffic in illegally taken wildlife.

For all of the above stated reasons, the Court finds, after reviewing all the evidence, both direct and circumstantial and all the inferences therefrom, in the light most favorable to the Government, that there was insufficient evidence for a reasonable jury to find beyond a reasonable doubt that Defendant knowingly conspired to traffic in illegal wildlife in violation of 16 U.S.C. §3373(d)(1) .  Defendant's conviction on Count One of the Indictment is VACATED.

### LESSER INCLUDED OFFENSE

At trial, Defendant requested, and the Court granted, his request for the jury to be instructed that if the jury determined that Defendant did not have the requisite knowledge,

it could find the Defendant guilty of the lesser included offense of conspiracy to traffic in wildlife which defendant should have known to be illegal pursuant to 16 U.S.C. § 3373(d)(2). To convict under this provision, the Government is not required to establish actual knowledge, but only that Defendant engaged in trafficking of wildlife, which through the exercises of due care, he should have known the wildlife was taken in violation of state law. 16 U.S.C. § 3373(d)(2).

While the Court does not believe there was sufficient evidence to establish that Defendant was involved in this conspiracy for the 2005 or 2007 hunt, the Court does find that there is sufficient evidence for a reasonable jury to find Defendant was guilty of conspiracy to traffic in wildlife which Defendant should have known to be illegal pursuant to 16 U.S.C. § 3373(d)(2). In this hunt, Defendant went to Wyoming in 2008 without a license and killed a bull elk. RC Carter then tagged that elk with one of his landowner tags. Later, Defendant corresponded with RC Carter regarding his horns and when and how those horns could be transported to Oregon. Even though the horns were never transported to Oregon, actual transportation is not required for a conspiracy offense.

While the Court has found that there was insufficient evidence for the jury to find that Defendant knew using the landowner tag was illegal, there is sufficient evidence to establish that in the exercise of due care, Defendant should have known that the transfer of land owner

tags was not allowed. For these reasons the Court finds that there was sufficient evidence for the lesser-included charge of conspiracy to traffic in wildlife which defendant should have known to be illegal pursuant to 16 U.S.C. § 3373(d)(2). Therefore the Court will enter Judgment against Defendant on the lesser included offense.

## CONCLUSION

For all the above stated reasons, the Court finds that in reviewing the evidence, both direct and circumstantial and all reasonable inferences in the light most favorable to the Government, that there was insufficient evidence that Defendant either directed or transported any part of the 2008 elk as required in Count Two. Additionally, the Court finds that there was insufficient evidence to find Defendant knowingly conspired to traffic in illegal wildlife in violation of 16 U.S.C. §3373(d)(1). However the Court does find that there is sufficient evidence to show that Defendant was guilty of the lesser-included charge of conspiracy to traffic in wildlife which defendant should have known to be illegal pursuant to 16 U.S.C. § 3373(d)(2).

IT IS ORDERED that Defendant's Motion for Acquittal is GRANTED for Count Four. Defendant's conviction on COUNT FOUR of the Indictment, Illegal Trafficking in Wildlife, 16 U.S.C. §§ 3372(a)(2)(A) and 3373(d)(1)(B), or the aiding and abetting thereof, 18 U.S.C. § 2 is VACATED.

IT IS FURTHER ORDERED Defendant's Motion for Acquittal is GRANTED for Count One. Defendant's conviction on COUNT ONE of the Indictment, conspiracy to traffic in illegal wildlife in violation of 16 U.S.C. §3373(d)(1) is VACATED.

IT IS FINALLY ORDERED that there was sufficient evidence to establish the lesser-included charge of conspiracy to traffic in wildlife which Defendant should have known to be illegal pursuant to 16 U.S.C. § 3373(d)(2) and therefore Defendant is GUILTY of that charge.

Dated on this __17__ day of May, 2012.

*/s/ Nancy D. Freudenthal*
NANCY D. FREUDENTHAL
UNITED STATES DISTRICT JUDGE